# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Civil Action No. 18-cv-03027-CMA

DENISE D. ROBINSON,

    Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

---

## ORDER REVERSING THE DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS AND SUPPLEMENTAL SECURITY INCOME

---

This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff Denise D. Robinson's application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–34, and for supplemental security income ("SSI"), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1382–85. Jurisdiction is proper under 42 U.S.C. § 405(g). The parties do not dispute that the Administrative Law Judge ("ALJ") committed a legal error in determining whether Plaintiff was entitled to benefits. However, the parties vociferously disagree as to whether the ALJ's failure to consider the borderline age situation amounts to harmless error. It does not. As such, the ALJ committed reversible error that requires remand.

## I. BACKGROUND

The parties hardly dispute the factual background in this case. Plaintiff Denise D. Robinson, born March 31, 1963, was fifty years old on the date she alleged her disability began, fifty-four years and three months old on the date that she was last insured, and fifty-four years and nine months old at the time of the ALJ's decision in January 2018. (Doc. # 16 at 1; Doc. # 17 at 3; Doc. # 12-2 at 26.) She suffers from the following severe impairments: fibromyalgia, degenerative disease, osteoarthritis in the bilateral knees and right hand, status post remote history of left knee arthroscopy. (Doc. # 12-2 at 18–22.) Additionally, Plaintiff has a tenth-grade education (*id.* at 39–40), and she last held a job in 2013. (*Id.* at 40.)

On July 20, 2012, Plaintiff's Title II applications for both a period of disability and DIB were denied on December 20, 2012. (Doc. # 12-3 at 29.) Plaintiff requested a hearing on these decisions on January 4, 2013; she also filed a Title XVI application for supplemental security income on February 22, 2013, which was escalated for a hearing. (*Id.*) On November 12, 2013, a hearing was held at which Plaintiff, who was represented by counsel, testified. (*Id.*) On December 6, 2013, ALJ James A. Wendland denied both of Plaintiff's applications. (*Id.* at 29–44.) The Appeals Council denied Plaintiff's request for review on June 1, 2015. (*Id.* at 50–53.)

On October 19, 2015, Plaintiff applied for both Social Security DIB pursuant to Title II and Part A of Title XVIII of the Social Security Act (Doc. # 12-5 at 2–5) and SSI under Title XVI of the Social Security Act (Doc. # 12-5 at 9–15). Both claims were denied on January 22, 2016. (Doc. # 12-4 at 2–10.) Subsequently, Plaintiff filed a

written request for a hearing on February 11, 2016, and that hearing was held on September 21, 2017, where Plaintiff was unrepresented. (Doc. # 12-2 at 33–62.)

On January 5, 2018, ALJ Kathleen Laub issued a written decision in which she denied Plaintiff's claims for DIB and SSI. (*Id.* at 16–28.) Reaching step five of the five-step process, the ALJ applied Grid Rule 202.11 based on Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), consulted with a vocational expert ("VE") regarding whether jobs existed in the national economy for which she was able to work, and ultimately determined that she was not under a "disability" as defined in Title II of the Social Security Act. (*Id.* at 26–27.) Plaintiff appealed, and the Appeals Council denied her request for review (*id.* at 4–6), making the ALJ's decision the final decision of the Commissioner of the Social Security Administration ("Commissioner").

## II. <u>STANDARD OF REVIEW</u>

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen,* 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)–(v); *see also Williams v. Bowen* 844 F.2d 748, 750–52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). "The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy." *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Morgan v. Colvin*, 68 F. Supp. 3d 1351, 1354–55 (D. Colo. 2014) (citing *Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 801 (10th Cir. 1991)).

This Court's review of the ALJ's determination is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the

Commissioner—through the ALJ—applied the correct legal standards. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938). It requires more than a scintilla, but less than a preponderance. *Wall*, 561 F.3d at 1084. In reviewing the record and the arguments of counsel, the Court does not reexamine the issues de novo, *Sisco v. U.S. Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

Additionally, "[f]ailure to apply the correct legal standard or to provide this [C]ourt with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and collecting cases). The standard for harmless error requires a finding that,

5

considering the evidence before the ALJ, the Court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145; *see also Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010); *Lynn P. v. Berryhill*, No. 17-CV-212-JFJ, 2018 WL 3142937, at *3 (N.D. Okla. June 27, 2018). Where the court "can follow the [ALJ's] reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

### III. DISCUSSION

Plaintiff does not object to the ALJ's analysis for the first four steps of the five-step process in determining whether Plaintiff was entitled to disability benefits. As such, the Court narrows its legal analysis to the ALJ's Step Five process, and specifically, the ALJ's application of the grids and whether a borderline age situation existed.

### A. STEP FIVE: APPLICATION OF THE GRID RULE

Because the ALJ found that Plaintiff was unable to perform any of her past relevant work, this case entered the fifth step of the five-step process for determining disability, "at which point the Commission had the burden of showing that Plaintiff could perform other work that exists in the national economy." *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998). The Commissioner can meet this burden through the use of the Medical-Vocational Guidelines ("grids" or "Grid Rules"). *See* 20 C.F.R. Part 404, Subpart P, App. 2; *Anders v. Berryhill*, 688 F. App'x 514, 517 (10th Cir. 2017). "The grids are matrices of the 'four factors identified by Congress—physical ability, age,

education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.'" *Daniels*, 154 F.3d at 1132 (quoting *Heckler v. Campbell*, 461 U.S. 458, 461–62 (1983)). Thus, the grids provide "a tool to aid in making uniform, efficient decisions in determining the types and numbers of jobs existing in the national economy for certain classes of claimants." *Perbeck v. Astrue*, 487 F. Supp. 2d 1267, 1272 (D. Kan. 2007) (citing *Heckler*, 461 U.S. at 468). "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00.

**B.    BORDERLINE AGE SITUATION**

With respect to the "age" factor, the "Commissioner has established three age categories: younger person (under age fifty), person approaching advanced age (age fifty to fifty-four), and person of advanced age (age fifty-five and over)." *Daniels*, 154 F.3d at 1132 (citing 20 C.F.R. § 404.1563). Pertinent to the instant case, the "approaching advanced age" and "advanced age" categories matter. "The difference between the two categories is subtle but critical." *Id.* at 1132. The regulations provide that "[i]f you are closely approaching advanced age (50–54), we will consider that your age, along with a severe impairment and limited work experience, may seriously affect your ability to adjust to a significant number of jobs in the national economy." 20 C.F.R. § 404.1563(c). The "advanced age (55 or over) is the point where age significantly affects a person's ability to do substantial gainful activity." *Id.* § 404.1563(d).

Given the importance of this subtle distinction, "to alleviate some of the arbitrariness of the age categories," *Daniels*, 154 F.3d at 1133, 20 C.F.R. § 404.1563(a) provides that ALJs shall "not apply these age categories mechanically in a borderline situation." The Tenth Circuit has observed that a borderline age situation exists when the claimant is within a few days or months of the next age category. *Id*. In the instant case, the parties do not dispute that a borderline age situation[1] exists. (Doc. # 16 at 2–5; Doc. # 17 at 5.)

"When a claimant falls within a borderline, [20 C.F.R.] § 404.1563(a) prohibits the Commissioner from mechanically applying the age categories in relying on the grids to determine whether a claimant is disabled." *Daniels*, 154 F.3d at 1136. This approach is consistent with the rule that the Commissioner has the burden of proof at step five because this step encompasses application of 20 C.F.R. § 404.1563(a). *Id.* (citing *Williams*, 844 F.2d at 751). In explaining why an ALJ should analyze the borderline age situation, the Tenth Circuit relied on the Third Circuit's *Kane v. Heckler* decision, and in particular, the following reasoning:

> In sum, courts recognize that the grids provide useful standards and allow for consistent, less complex decision-making. But judicial approval of these standards is premised on the assurance that [the Social Security Administration] will not employ them to produce arbitrary results in individual cases. Where a procrustean application of the grids results in a case that, but for the passage of a few days, would be decided differently, such an application would appear to be inappropriate. Section 404.1563(a) therefore

---

[1] In determining whether a borderline age situation exists, for a claimant seeking DIB, the oldest age to be considered is the person's age at the date last insured. SSR 83-10, 1983 WL 31251, at *8. For a claimant seeking SSI, the claimant's "age on the date of the ALJ's decision is the relevant date." *Byers v. Astrue*, 506 F. App'x 788, 790 (10th Cir. 2012).

8

> serves an important purpose in the regulatory scheme, and ALJs should adhere to its clear language.

*Id.* (quoting *Kane v. Heckler*, 776 F.2d 1130, 1132 (3d Cir. 1985)). Running with the Third Circuit's decision, the Tenth Circuit articulated that "[w]hat is critical is the fact that in a borderline situation . . . § 404.1563(a) plainly precludes mechanical application of the age categories, that is, simply considering the chronological age of the claimant at the relevant time. Failure to consider the effect of a borderline situation in turn precludes application of the grids as a basis for finding no disability, because the Commissioner will not have shown that 'the claimant's characteristics precisely match the criteria of a particular rule.'" *Id.* (quoting *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984)).

Proper assessment of the borderline age situation entails the ALJ's determination, based on the available evidence, of which age category on either side of the borderline best describes the claimant. *Id.* at 1136. That determination is a factual issue. *See id.* "Like any factual issue, a finding regarding the appropriate age category in which to place a claimant must be supported by substantial evidence." *Id.* at 1136, 1133–34 n.5 ("Determining whether a claimant falls within a borderline situation appears to be a factual rather than discretionary matter, and [an ALJ errs] by not making this necessary factual finding."). Of course, a borderline age situation does not preclude reliance on the grids. *Id.* at 1136. However, prior to relying on the grids, the ALJ must address the situation and whether the claimant "fell within the borderline or whether he should be considered in the next age bracket." *Byers v. Astrue*, 506 F. App'x 788, 791 (10th Cir. 2012). In doing so, the ALJ should "explain the factors" he or she "considered in making" the decision of choosing an age category in a borderline age situation. *Ober*

9

*v. Comm'r of Social Sec. Admin.*, No. CIV-17-79-SPS, 2018 WL 4565389, at *4 (E.D. Okla. Sept. 24, 2018) (citing HALLEX I-2-2-42; POMS DI 25015.006(G)).

When an ALJ fails to consider a borderline age situation or make findings as to why the ALJ selected the age category within a particular grid rule, the Commissioner misapplies the law and the case must be remanded for further consideration of the issue. *Daniels*, 154 F.3d at 1136; *Byers*, 506 F. App'x at 791 (holding that "a remand is in order because we cannot tell whether the ALJ would have reached the same result by considering that [claimant] was five-and-a-half months short of advanced age"); *Wilson v. Comm'r of Social Sec. Admin.*, No. CIV-16-464-BMJ, 2017 WL 722052, at *3–4 (W.D. Okla. Feb. 23, 2017) (holding that remand is required where ALJ's decision "fails to reflect that she was even aware of the borderline [age] situation"); *Nugent v. Colvin*, No. CIV-13-253-KEW, 2014 WL 4854733, at *2 (E.D. Okla. Sept. 30, 2014) (requiring ALJ to address borderline age situation on remand); *Grimes v. Berryhill*, No. CIV-17-257-D, 2018 WL 1278583, at *4–5 (W.D. Okla. Feb. 15, 2018) ("remand is required because the ALJ's decision fails to reflect she was even aware of the borderline situation"), *report and recommendation adopted*, 2018 WL 1278297, at *1 (W.D. Okla. Mar. 12, 2018).

**C.    ANALYSIS**

Neither party disputes that a borderline age situation exists and that the ALJ failed to consider the issue. At the time the ALJ issued her written decision, Plaintiff was three months away from qualifying in the "advanced age" category. Without mentioning the borderline age situation, the ALJ determined that Plaintiff's age constituted the

"approaching advanced age," and, in considering that age category along with her education, work experience, and RFC, she applied Grid Rule 202.11. (Doc. # 12-2 at 26.) Because Grid Rule 202.11 provided a finding of "not disabled" and other limitations impeded Plaintiff's "level of work," the ALJ consulted with a VE to "determine the extent to which these limitations erode the unskilled light occupational base." (*Id.* at 26.) The ALJ asked the VE whether "jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]." (*Id.*) Because the VE testified that Plaintiff "would be able to perform the requirements of representative occupations" for which over one million national jobs existed, the ALJ found that Plaintiff was "not disabled" under the "framework of the above-cited rule." (*Id.* at 26–27.)

Plaintiff argues that the ALJ's failure to consider the borderline age situation constitutes reversible error and merits remand. (Doc. # 16 at 2–5.) The Commissioner concedes that Plaintiff's case presented a borderline age situation and that the ALJ failed to conduct the requisite analysis of that situation. (Doc. # 17 at 5.) However, the Commissioner contends that this error was harmless because Plaintiff failed to argue "how she has vocational adversities that would justify applying the older age category." (*Id.* at 5.) Because the ALJ's error requires remand under Tenth Circuit precedent and the Commissioner attempts to improperly saddle Plaintiff with the burden at this Step Five juncture, the Court disagrees with the Commissioner's contention.

First, Tenth Circuit authority provides that an ALJ's failure to consider a borderline age situation requires reversal and remand. Because a determination of which age category to use in applying the grids is a factual issue that must be supported

by substantial evidence, when an ALJ fails to consider the issue altogether, remand is required so that the ALJ can make this finding "regarding the appropriate age category in which to place a claimant[.]" *Daniels*, 154 F.3d at 1136. When the record reveals that the ALJ was not aware of a potential borderline situation, a "remand is in order because [courts] cannot tell whether the ALJ would have reached the same result by considering" the borderline age situation. *Byers*, 506 F. App'x at 791; *see also Wilson*, 2017 WL 722052, at *3 (requiring remand when ALJ's decision failed to reflect that ALJ was aware of borderline age situation because Tenth Circuit requires ALJ to make factual findings as to selection of age category).

In the instant case, the record is devoid of any reference to or consideration of the borderline age situation. (Doc. # 12-2 at 16–62.) As such, this Court too "cannot tell whether the ALJ would have reached the same result by considering" the borderline age situation." *Byers*, 506 F. App'x at 791. Furthermore, the ALJ "simply consider[ed] the chronological age of the claimant" at the relevant time for Plaintiff's claim for DIB while simultaneously ignoring the borderline age situation as to her SSI claim. (Doc. # 12-2 at 26.) As the Tenth Circuit observed, 20 C.F.R. § 404.1563(a) "plainly precludes" such simple consideration of a claimant's age. *Daniels*, 154 F.3d at 1135. Therefore, because the ALJ then utilized the "approaching advanced age" category in relying on Grid Rule 202.11 for her decision that Plaintiff was not disabled, the Commissioner "misapplied the law and the case must be remanded for further consideration of this issue." *Id.*

Next, the Commissioner contends that it is Plaintiff who must demonstrate why the ALJ's error is not harmless (Doc. # 17 at 5–6); but this position contravenes Tenth

Circuit authority. The *Daniels* court espoused clearly that the Commissioner has the burden to determine what age category applies in a borderline age situation. 154 F.3d at 1133–34. As a result, it is undoubtedly the Commissioner's burden to "show that a claimant's characteristics precisely match those of the grids." *Id.*at 1134; *see, e.g.*, *Wood v. Saul*, No. CIV-18-1160-C, 2019 WL 6570192, at * (W.D. Okla. Nov. 12, 2019) (concluding that "the Tenth Circuit has squarely rejected" the Commissioner's argument that ALJ's failure to consider borderline age situation was harmless error because it is a claimant's burden to "establish vocational adversities justifying application of the higher age category") (citing *Daniels*, 154 F.3d at 1134–35), *report and recommendation adopted*, 2019 WL 6529123, at *1 (W. D. Okla. Dec. 4, 2019). Therefore, this Court rejects the Commissioner's argument that Plaintiff failed to meet her burden in proving that the error was harmless.

Finally, because the burden of establishing harmless error rests with the Commissioner, the Court considers the contention that the evidence shows that the ALJ's error was harmless and that the ALJ would have selected the same age category. (Doc. # 17 at 6.) That contention is beside the point. This Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) (citing *Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004)). Indeed, this Court's "post-hoc effort to salvage the ALJ's decision would require [it] to overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process." *Allen*, 357 F.3d at 1142 (holding that ALJ's error in using grids

13

contrary to RFC findings and specification of available jobs contrary to VE testimony based on same RFC findings was not harmless). This is especially true when post hoc rationalization of an ALJ's decision would usurp the ALJ's primary responsibility to determine the question in the first instance. *See id.* at 1145. "[T]o the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action recognized in *SEC v. Chenery Corp.*, 318 U.S. 80 (1943) and its progeny." *Id.* at 1145. Of course, "it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), [a court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.*

The Court agrees with the several district courts in the Tenth Circuit that hold that failure to consider the borderline age situation does not constitute harmless error where use of a different age category in applying the grid rule may result in a disabled determination. *Wilson*, 2017 WL 722052, at *4; *Ober*, 2018 WL 4565389, at *3–5; *Nugent*, 2014 WL 4854733, at *2–3; *Grimes*, 2018 WL 1278583, at *4–5; *Wood*, 2019 WL 6570192, at *5. The distinction between the "advanced age" and "approaching advanced age" categories carries dispositive ramifications: "the former category significantly affects a person's ability to do substantial gainful activity, while the age of those in the latter category merely seriously affect[s their] ability to adjust to a significant number of jobs in the national economy." *Daniels*, 154 F.3d at 1136 (quoting *Kane*, 776

F.2d at 1134) (internal quotation marks omitted). The Tenth Circuit has recognized that failure to "consider the effect of a borderline situation . . . precludes application of the grids as a basis for finding no disability, because the Commissioner will not have shown that the claimant's characteristics precisely match the criteria of a particular rule." *Id.* at 1134–35. This is so because the grids contemplate several scenarios in which simply applying "advanced age" with the same combination of remaining factors would warrant a disabled determination. *See, e.g.*, 20 C.F.R. Part 404, App. 2, Subpart P, Tbl. 2. When evidence of the record could support a determination of disability, "any error is not harmless." *Wilson*, 2017 WL 722052, at *4 (citing *Allen*, 357 F.3d at 1145).

As for the instant case, the ALJ's error in failing to consider the borderline age situation is not a harmless one. The record evinces the possibility that, had the ALJ considered the borderline age situation and used the "advanced age" metric for applying the grid rules, a finding of disability may have resulted. The ALJ wrote that "[i]n determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2." (Doc. # 12-2 at 26.) Given Plaintiff's RFC to perform light work, the ALJ determined that "a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.11." (*Id.*) However, had the ALJ determined that using the "advanced age" was proper, assuming *arguendo* that all remaining factors used for Grid Rule 202.11 remained the same, the ALJ would have applied Grid Rule 202.02, which presumes a finding that Plaintiff was disabled. 20 C.F.R. Part 404, App. 2, Subpart P,

Tbl. 2, § 202.02. This possibility demonstrates that the ALJ's failure to consider—let alone recognize—the borderline age situation constitutes reversible error that was not harmless. Furthermore, that the ALJ incorporated VE testimony is of no moment given that "the ALJ concluded [her] decision by stating that "[a] finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule [202.11]." *Byres*, 506 F. App'x at 791 n.1; (Doc. # 12-2 at 27). As such, this case must be remanded so that the ALJ can address Plaintiff's borderline age situation.[2]

On remand, the adjudicator must evaluate the borderline age situation by determining which of the categories on either side of the borderline best described Plaintiff at the time the borderline evaluation should have been made by the first adjudicator and make findings susceptible to review. *See Daniels*, 154 F.3d at 1133, 1133 n.5; *see also Benson v. Colvin*, No. CIV-15-0428-HE, 2016 WL 4690415, at *6 (W.D. Okla. Sept. 7, 2016); *Noteware v. Astrue*, No. CIV-10-912-HE, 2011 WL 3651295, at *5–6 (W.D. Okla. Aug. 18, 2011), *report and recommendation adopted*, 2011 WL 3652255 (W.D. Okla. Aug. 18, 2011).

---

[2] Although the Commissioner does not dispute that a borderline age situation exists as to Plaintiff's claim for SSI, the Commissioner objects to any remand as to the ALJ's decision on Plaintiff's claim for DIB. (Doc. # 17 at 5 n.5.) But the ALJ failed to recognize the borderline age situation, including distinctions as to whether her reasoning applied differently to Plaintiff's claims for DIB and SSI. Moreover, based on the ALJ's flawed use of the grids, this Court cannot reconstruct the record to provide an end-around for what the ALJ should have already done with respect to delineating facts in support of her SSI and DIB determinations and how, if at all, the borderline age situation affects either decision. Such reconstruction would amount to a "post-hoc effort to salvage the ALJ's decision," which, in turn, would overstep this Court's "institutional role and usurp essential functions committed in the first instance to the administrative process." *Allen*, 357 F.3d at 1142. In any event, when this Court remands this case to the ALJ for failure to consider the borderline age situation, upon such consideration, as permitted under 42 U.S.C. § 405(g), the Commissioner may "modify or affirm the Commissioner's findings of fact or the Commissioner's decision."

### D. APPOINTMENTS CLAUSE CHALLENGE

Relying on *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), Plaintiff also challenges the ALJ's decision as void because the ALJ was not properly appointed under the Constitution's Appointments Clause, and therefore, she did not have legal authority to preside over the case. (Doc. # 16 at 5–9.) The Commissioner responds that Plaintiff waived her right to raise an Appointments Clause challenge because she did not timely raise this issue throughout the administrative process. (Doc. # 17 at 7–17.) The Court declines to address this issue. Because the ALJ's decision will be reversed and remanded based on the ALJ's failure to consider the borderline situation, the Court need not address Plaintiff's Appointments Clause challenge (Doc. # 16 at 5–9). On July 16, 2018, the Acting Commissioner ratified the appointments of all Social Security Administration ALJs following the Supreme Court's *Lucia* decision. SSR 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019). The ALJ who presides over this case on remand will be properly appointed, and there is no need for this Court to decide whether the ALJ who initially decided this case was properly appointed pursuant to *Lucia*.

### IV. CONCLUSION

For the foregoing reasons, the Court reverses the decision of the Commissioner and remands the matter for further administrative proceedings consistent with this Order.

DATED: March 13, 2020          BY THE COURT:

*[signature]*
CHRISTINE M. ARGUELLO
United States District Judge